Stephen McCLENNAHAN et al., Appellants,

v.

Freddie WEAVER, Appellee.

No. 5485.

Court of Civil Appeals of Texas, Waco.

Sept. 25, 1975.

G. David Westfall, Dallas, for appellants.

Andy J. McMullen, Hamilton, for appellee.

OPINION

JAMES, Justice.

This is a venue case under Section 9a of Article 1995, Vernon's Texas Civil Statutes. Plaintiff-Appellee Freddie Weaver brought this suit in Hamilton County, Texas, against Defendant-Appellant Stephen McClennahan and two other defendants, all of whom were residents of Dallas County, Texas. The suit grew out of a motor vehicle accident which occurred on U. S. Highway 281 about two miles south of the City of Hamilton, in Hamilton County, Texas. All three defendants filed pleas of privilege to transfer the cause to Dallas County, Texas. Plaintiff-Appellee controverted Defendant-Appellant Stephen McClennahan's plea of privilege under Section 9a of Article 1995. The trial court after hearing overruled Defendant-Appellant Stephen McClennahan's plea of privilege and sustained the pleas of privilege of the other two defendants. From this Defendant-Appellant Stephen McClennahan appeals on 58 points of error. We affirm the trial court's judgment.

The accident occurred on October 21, 1972, in Hamilton County, Texas, about two miles south of the City of Hamilton. Plaintiff Weaver was driving a 1973 Chevrolet Vega northward on U. S. Highway 281 towards Hamilton at the time and on the occasion of the accident. The weather was foggy, with misting rain, and visibility was "very limited" to the extent that a motor vehicle was not visible to the driver of another vehicle except when such driver was in immediate proximity to such vehicle. Shortly before the accident, Defendant Stephen McClennahan was driving a pickup truck southward on U. S. Highway 281 in or about the southern outskirts of the City of Hamilton; whereupon he stopped at a service station to fill his car with gasoline. When he started to leave, his pickup would

not start. The service station man offered to call, and did call the "Western Auto Man" in Hamilton. In response to this call, in about fifteen minutes, one Charles H. Neiman appeared on the scene driving a white Ford pickup. Neiman first checked the battery on Defendant's pickup and determined that it was all right. Then Neiman suggested that "since neither one of us could do anything, that we try towing it to get it started." Defendant agreed. Neiman had a chain about ten feet long which he tied from the rear of his pickup to the front of Defendant's pickup, and he towed Defendant southward down the highway about a quarter of a mile. Defendant's pickup still would not start. At this point, Neiman and Defendant got out of their respective pickups and discussed the problem. They determined that Defendant's pickup had trouble with the starter. Neiman told Defendant: "Well, all I can suggest is towing you down to this garage," indicating it was down the highway in a southward direction. Defendant said, "That's great, I would just like to get on the road again." So, with Neiman in his pickup and Defendant at the steering wheel of his pickup, Neiman towed Defendant southward down the highway until they got approximately even with Chumney Tractor Co. parking lot located on the east side of the highway. Defendant did not know where Neiman was taking him. When they got even with the Chumney parking lot, Neiman made a lefthand turn out of his lane of traffic, and across the northbound traffic lane of the highway and headed into the Chumney Tractor Co. parking lot. Of course, Defendant was being towed behind Neiman. At the point wherein Neiman's pickup was about off the east side of the highway and Defendant's pickup was in the process of crossing the northbound lane, Plaintiff's motor vehicle traveling north struck Defendant's pickup, thereby causing personal injuries and automobile damage for which Plaintiff sues.

Neiman's pickup was not equipped with any special equipment for towing purposes, nor was it equipped with any special or blinking lights. Defendant testified that Neiman told him that the garage to which he was going to be towed was up the road; however, Defendant did not inquire where the garage was or on which side of the highway it was located. On cross-examination, Defendant testified that when they stopped on the side of the highway after unsuccessfully trying to start his pickup, and before they started the towing process again, that he (Defendant) had the option to leave the vehicle on the side of the road if he wished. Defendant further testified that Neiman was a total stranger to him, and that he did not ask Neiman if he knew anything about towing, nor did he make any inquiry of Neiman's driving record. Moreover, on cross-examination, Defendant testified that he was aware that accidents do occur involving a towed vehicle and another vehicle on the road, and that prior to the time of the collision in question, he was aware that such a possibility existed.

Plaintiff alleged, in addition to other grounds of negligence on the part of Defendant, the following:

"f. In being towed by another vehicle when it would not have appeared to a person using ordinary care that such towing could be done with safety.

"g. ___ being towed by a vehicle that was not specially equipped for towing functions _____.

"h. ___ allowing his vehicle to be towed on a main thoroughfare through Hamilton County, when, because of the existing weather conditions, it would not appear to a person using ordinary care that such towing activity could have been accomplished with safety."

Defendant-Appellant asserts there is no evidence, and insufficient evidence to support the trial court's implied findings of negligence and proximate cause concerning the three alleged grounds of negligence on Defendant's part hereinabove quoted. We do not agree.

Section 9a, Article 1995, places the burden upon the plaintiff to establish by the preponderance of the evidence the following venue facts to sustain venue in a county other than the county of defendant's residence as follows:

"1. That an act or omission of negligence occurred in the county where suit was filed.

"2. That such act or omission was that of the defendant, in person, or that of his servant, agent, or representative acting within the scope of his employment.

"3. That such negligence was a proximate cause of plaintiff's injuries."

Applying the venue requirements of Section 9a to the facts of the case at bar, we hold the evidence to be legally and factually sufficient to support the trial court's implied findings concerning the above-quoted three grounds of negligence. Likewise, we hold that the evidence is legally and factually sufficient to support the trial court's implied findings that each such ground of Defendant's negligence was a proximate cause of the accident in question and Plaintiff's injuries.

Our Supreme Court in *Hopson v. Gulf Oil Corporation* (Tex.1951), 150 Tex. 1, 237 S.W.2d 352, has laid down the following rules concerning the elements of proximate cause at pages 355 and 356.

"Two elements or tests of proximate cause are causation and the limitation to foreseeable consequences. As to causation, it is said that if the defendant's act or omission was a substantial factor in bringing about the result, it will be regarded as a cause, and that ordinarily it will be such a substantial factor if the result would not have occurred without it. . . ."

"In using foreseeableness as a test to determine proximate cause . . . it is not necessary that the defendant should or would reasonably anticipate the very consequences or the exact nature of the plaintiff's injury or the precise manner of its infliction. It is sufficient that the defendant would reasonably have anticipated consequences or an injury of the general nature of that which ensued."

Applying the test laid down in *Hopson* to the case at bar, we overrule Defendant-Appellant's points concerning the aforesaid proximate cause (implied) findings of the trial court. In the light of our holdings herein stated the Appellant's remaining points of error are rendered moot. Judgment of the trial court is affirmed.

Affirmed.